**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 15-CIV-61989-WPD**

FRANWELL, INC.,

Plaintiff,

v.

BIO-TECH MEDICAL SOFTWARE, INC.,
STEVEN SIEGEL and PATRICK VO,

Defendants.
_______________________________________________/

**OMNIBUS ORDER**

THIS CAUSE is before the Court on Defendants' Motion to Dismiss [DE 18] and the Plaintiff's Motion for Preliminary Injunction [DE 2] (collectively, the "Motions"). The Court has carefully reviewed the Motions, the parties' briefs, and is otherwise fully advised in the premises.

## I. Background

### a. Procedural History

Plaintiff, Franwell, Inc. ("Franwell"), commenced this action on May 11, 2015, in the Middle District of Florida, against Defendants, Bio-tech Medical Software, Inc., d/b/a BioTrack THC ("BMS"), Steven Siegel, and Patrick Vo. [DE 1]. Plaintiff alleges False Marking under 35 U.S.C. §292; Tortious Interference with a Business Relationship; False Advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a); Misleading Advertising under Florida Statutes, Section 817.41; Common Law Unfair Competition; Deceptive and Unfair Trade Practices, Florida Statutes, Section 501.201; and Defamation. *Id.* Concurrently with the Verified Complaint, Plaintiff filed a Motion for Preliminary Injunction. [DE 2]. On June 3, 2015,

Defendants filed a Motion to Change Venue. [DE 10]. On June 29, 2015, Defendants filed a Motion to Dismiss and the Request for Oral Argument regarding the Motion to Dismiss. [DE 18, 19]. On September 18, 2015, the Motion to Transfer Venue was granted; this action was transferred to the undersigned on September 21, 2015. *See* [DE 37-39].[1]

Upon transfer, the undersigned issued an Order requiring the parties to submit a Joint Status Report detailing any pending motions in this action, the status of such motions' briefing, and bringing to the Court's attention any other pertinent matters upon transfer. [DE 42]. In the Joint Status Report, filed on October 6, 2015, the parties reported that the Motion for Preliminary Injunction, Motion to Dismiss, and Request for Oral Argument on the Motion to Dismiss remained pending. *See* [DE 44]. The Joint Status Report noted that while the briefing is complete as to the Motion to Dismiss, Defendants had not responded to the Motion for Preliminary Injunction. *Id.* That same day, Defendants filed a Response to the Motion for Preliminary Injunction, which Plaintiff moved to strike due to its untimeliness. [DE 45, 46]. In an Order issued on October 20, 2015, the Court denied the Motion to Strike, and granted the Motion for Oral Argument, setting this action for hearing on both the Motion for Preliminary Injunction [DE 2] and the Motion to Dismiss [DE 18]. On November 17, 2015, the Court heard oral argument on the Motion to Dismiss and deferred argument on the Motion for Preliminary Injunction. *See* [DE 20].

**b. Allegations in the Complaint**

Franwell and BMS[2] are both Florida corporations, doing business throughout the United States and internationally. [DE 1 ¶ 4]. Siegel is the Chairman of the Board of BMS and has been

---

[1] The Court notes that this action was reassigned to a different judge twice prior to its transfer to the Southern District of Florida. *See* [DE 17, 33, 34].

[2] BioTrackTHC was organized in 2007 under the name "Bio-Tech Medical Software, Inc." and filed a Florida fictitious name registration on Sept. 23, 2013, as the owner of the fictitious name BioTrackTHC. [¶ 5]. Plaintiff references both names interchangeably. [¶6].

generally referred to in press releases as its Chief Executive Officer. [¶ 7]. Press releases generally refer to Vo as the Chief Financial Officer of BMS. [¶ 8]. Franwell is in the business of computer software and radio frequency identification ("RFID") systems, with a primary focus on tracking and tracing a range of tangible items such as legalized marijuana, fresh food, and pharmaceuticals. [¶ 9].

States within the United States and countries with legalized marijuana typically use what are known as "seed-to-sale tracking systems" to monitor and track: (1) marijuana from its cultivation to its processing and sale; and (2) the activities of industry participants engaged in such processes. [¶¶ 14, 28]. These extensive tracking systems are unique to government regulators, and differ substantially from the internal record keeping of individual industry participants. [¶ 16]. In a bid to win one of these competitive seed-to-sale tracking system contracts (and in fact, the first of these such contracts), Franwell submitted a written response on May 12, 2011, to a Request For Proposal (an "RFP") from the State of Colorado Department of Revenue by its Division of Finance and Procurement (the "Colorado DFP"). [¶¶ 11, 20]. Franwell was ultimately awarded the Colorado contract, effective August 25, 2011. [¶ 18]. The Colorado seed-to-sale tracking system, initially called "MITS" and later "METRC," was the first such tracking system to be implemented within the United States and is still maintained by Franwell. [¶¶ 20, 43].

While Franwell's customer base is solely regulatory government bodies in need of tracking on a macro level, BMS sells its software programs both to regulatory government bodies and to industry participants, such as marijuana growers, who need tracking on a micro level. [¶¶ 29, 30]. While BMS has used the term "seed-to-sale tracking" to refer to these micro systems in addition to the macro-systems, Franwell maintains that the micro systems are more accurately referred to as

"point of sale" or "POS" systems. [¶¶ 33, 34]. Franwell takes issue with BMS's characterization of its POS systems as seed-to-sale tracking systems applicable to government macro-tracking needs. [¶ 41]. For this reason, Franwell alleges that BMS, Siegel, and Vo have provided government officials with distorted information regarding BMS's experience, achievements, and status through direct and indirect channels, such as through its website and other internet postings, press releases, televised interviews. [¶¶ 39-40, 57]. For instance, BMS has characterized itself as having developed the first and only true marijuana seed-to-sale tracking system, despite Franwell's implementation of its seed-to-sale tracking system in Colorado. [¶ 42]. Franwell alleges that BMS has also touted its "patented technology," despite BMS actually having no patents on a seed-to-sale tracking system. [¶¶ 65-66]. Franwell contends that the limited experience possessed by the various states and foreign countries in regulating marijuana mean that governmental decision-makers are likely to be influenced by such communications. [¶ 55].

Franwell specifically alleges that BMS has targeted Colorado officials and marijuana industry participants in Colorado with misinformation in an attempt to interfere with Franwell's Colorado contract and in their competition for seed-to-sale tracking with the country of Jamaica. [¶¶ 70-80]. Specifically: (1) BMS representatives told industry customers required to report on Franwell's system to Colorado that Franwell "continues to keep changing their import instructions and it has caused all kinds of problems" and that "Franwell is not being supportive or providing documentation"; and (2) Vo e-mailed a Colorado official stating that Franwell's system is "wholly inadequate" and offering to replace the Franwell system. [¶¶ 71-72]. Franwell also alleges that BMS entered into a contract with Medbox, Inc. ("Medbox"), a Nevada corporation, shortly after Medbox offered Washington State their guidance, suggestions, and consultation at no cost to

Washington officials tasked with developing and implementing a legal marijuana industry. [¶ 58]. This relationship enabled BMS to communicate indirectly with Washington State officials through Medbox, and BMS was ultimately awarded the Washington State seed-to-sale tracking contract. [¶ 59]. Franwell avers that BMS's agent, Wanda James, falsely stated to a Jamaican official that it has "beaten Franwell in each of the states they have competed for the contracts," when in reality Washington State is the only state in which BMS was awarded a contract following competition from Franwell. [¶ 80]. Franwell has engaged legal counsel to demand that BMS cease and desist the publication of false, misleading, and disparaging statements and to send retraction of such statements, however, the Defendants have refused to do so. [¶¶ 85, 87].

**II. Standard of Review**

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals

of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984)).

**III. Discussion**

**a. False Marking Claim**

Defendants argue that Plaintiff fails to state a claim for False Marking pursuant to 35 U.S.C. § 292. To state a false marking claim, a plaintiff must allege: "(1) the marking of an unpatented article; (2) with an intent to deceive the public." *Herengracht Grp. LLC v. Intelligent Products, Inc.*, No. 10-21785-CIV, 2011 WL 938995, at *3 (S.D. Fla. Mar. 16, 2011) (citing *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed.Cir.2009)). Rule 9(b)'s heightened pleading standard applies to false marking claims. *Id.* Under the America Invents Act ("AIA"), plaintiff must also show that "it suffered a competitive injury as a result of the false marking." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed.Cir.2013).

With respect to the first prong, Plaintiff alleges that Defendants have referenced the words "patent," "patented," "patented technology" and "patent protected" in combination with its references to "its seed-to-sale tracking system." Plaintiff, however, incorporates paragraphs 1-89 into the count. As such, it is difficult to discern which allegations are attributable to the False Marking claim, subjecting the claim to dismissal.

Defendant also argues that Plaintiff has not adequately pled the requisite intent to deceive. "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking

that the statement is true." *Id.* (quoting *Clontech Labs., Inc. v. Invitrogen Corp*., 406 F.3d 1347, 1352 (Fed.Cir.2005)). "The bar for proving deceptive intent in false marking cases is particularly high"; plaintiff must show "a purpose of deceit, rather than simply knowledge that a statement is false." *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011) (quoting *Pequignot v. Solo Cup Co*., 608 F.3d 1356, 1362–63 (Fed.Cir.2010)). Plaintiff alleges simply that Defendants conduct was "done in bad faith" and "was intended to deceive the public and did deceive the public." [DE 1 ¶¶ 95-96]. Plaintiff argues that the type of statements made by Plaintiff in and of themselves show the required scienter for a false marking claim; however, *In re BP Lunricants USA Inc.*, cited by Plaintiff for this proposition, explicitly states the opposite. *In re BP Lubricants USA Inc.*, 637 F.3d at 1312 (explaining that a false marking "clearly . . . requir[es] more than a mere statement."). The Court agrees with Defendant; Plaintiff has not adequately alleged intent to deceive.

Finally, Defendants argue that Plaintiff has failed to show that it suffered a competitive injury, as Plaintiff merely alleges that it "has suffered and continues to suffer damages in lost sales, lost market share, loss of goodwill, increased promotional costs, and lost profits." [DE 1 ¶ 98]. *See Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 624 (D. Del. 2014) (allegations of "lost sales, loss of market share, loss of business opportunities" insufficient to show competitive injury). Plaintiff counters that some courts have held that competitive injury is presumed when the parties are competitors. *See RB Rubber Products, Inc. v. ECORE Int'l, Inc.*, No. 3:11-CV-319-AC, 2012 WL 4068557, at *9 (D. Or. Sept. 14, 2012) ("[C]ompetitive injury exists where the parties are in competition in the relevant market and the alleged false marking harms the plaintiff's ability to compete."). While the Court acknowledges that the law is not settled as to this point in this circuit,

the Court finds that, especially in light of the litany of purported wrongdoing on behalf of Defendant, Plaintiff must plead damages with greater specificity. Plaintiff has not pled sufficient facts "to indicate a 'plausible causal connection' between the alleged false marking and the alleged injury." *Cot'n Wash, Inc.*, 56 F. Supp. 3d at 625 (quoting *Rogers v. Conair Corp.*, Civ. No. 10–1497, 2012 WL 1443905, at *4 (E.D.Pa. April 25, 2012)).

**b. False Advertising under the Lanham Act**

To establish a false advertising claim under section 43(A) of the Lanham Act, Plaintiff must establish that: (1) Defendants' ads were false or misleading; (2) the ads deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing choices; (4) the product affects interstate commerce; and (5) Plaintiff has been, or is likely to be, injured because of the false advertising. *Stiefel Labs., Inc. v. Brookstone Pharm., L.L.C.*, 535 F. App'x 774, 776 (11th Cir. 2013).

As a preliminary matter, Plaintiff again incorporates the first 89 paragraphs into Count III, requiring the Court to sift through the lengthy Complaint to determine which allegations pertain to this cause of action. This alone warrants dismissal. Additionally, the Lanham Act claim is subject to dismissal because its allegations are conclusory. For instance, regarding prongs two through four, Plaintiffs merely allege that the relevant statements "deceived, or had the capacity to deceive, consumers, including the State of Washington"; "had a material effect on purchasing decisions, including the State of Washington"; and "affected interstate commerce." [DE 1 ¶¶ 115-17].

Furthermore, Plaintiff has failed to plead who comprises the consuming public and the alleged breadth of the dissemination. *See Minsurg Int'l, Inc. v. Frontier Devices, Inc.*, No. 8:10-CV-1589-T-33EAJ, 2011 WL 1326863, at *4 (M.D. Fla. Apr. 6, 2011) (the relevant representations must be disseminated sufficiently to the relevant purchasing public to constitute

"advertising" or "promotion" within an industry); *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-CV-775-T-24-TBM, 2012 WL 33155, at *2 (M.D. Fla. Jan. 6, 2012) ("[T]he plaintiff must allege both (1) who comprises the relevant purchasing public and (2) how many consumers within the relevant purchasing public received the advertisement."). Defendant notes that Plaintiff does not identify in this count any alleged misstatement that any official actually saw or heard. The Court agrees with Defendant that, as pled, the Complaint does not allege that the false advertisements were sufficiently disseminated to the relevant purchasing public.

**c. Remaining causes of action and arguments.**

At this time, the Court need not, and should not, determine whether the *Noerr-Pennington* doctrine extends to Plaintiff's False Marking and Lanham Act claims. *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1084 (C.D. Cal. 2010) (refraining from determining whether *Noerr-Pennington* doctrine applied to Lanham Act claim because there was an alternative non-constitutional basis for dismissing the claim); *see also Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 130 (3d Cir. 2005) (same).

As to the other counts alleged in the Complaint, under 28 U.S.C. § 1367(c), this Court may decline to exercise supplemental jurisdiction over a claim where it raises a novel or complex issue of State law or the district court has dismissed all claims over which it has jurisdiction. Accordingly, noting that this action is still in the early stages of litigation, the Court declines to exercise supplemental jurisdiction over the non-federal counts and will dismiss the Complaint in its entirety.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss [DE 18] is hereby **GRANTED**;
2. Plaintiff may file an Amended Complaint on or before **December 8, 2015**. Failure to timely file an Amended Complaint will result in the Court closing the case; and
3. The Motion for Preliminary Injunction [DE 2] is hereby **DENIED without prejudice**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 18th day of November 2015.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record