**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 15-CIV-61989-WPD**

**FRANWELL, INC.,**

**Plaintiff,**

**v.**

**BIO-TECH MEDICAL SOFTWARE, INC.**
**D/B/A BIOTRACKTHC,**
**STEVEN SIEGEL, AND PATRICK VO,**

**Defendants.**
_______________________________________/

# VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Franwell, Inc. ***("Franwell")***, by and through its undersigned counsel, sues Defendants, Bio-Tech Medical Software, Inc. d/b/a BioTrackTHC ***("BioTrackTHC")***, Steven Siegel ***("Siegel")***, and Patrick Vo ***("Vo")*** and alleges:

## JURISDICTION AND VENUE

**1.** This Court has jurisdiction under 28 U.S.C. § 1331 and 1338(a) and (b), predicated upon the false advertising violations of the Lanham Act, 15 U.S.C. §1125(a), false marking of patent coverage violations of 35 U.S.C. §292, and the competitive injuries to Plaintiff as a result of the violations both such statutes, and has pendent jurisdiction of the tortious interference, unfair competition, deceptive trade practices, defamation, and related Florida statutory and common law claims.

**2.** Venue is proper pursuant to 28 U.S.C. 1391.

## GENERAL ALLEGATIONS

**3.** Plaintiff Franwell is a Florida corporation which conducts business throughout the United States and countries outside the United States.

**4.** Defendant BioTrackTHC is a Florida corporation which conducts business throughout the United States and countries outside the United States.

**5.** BioTrackTHC was organized on January 31, 2007 under the name Bio-Tech Medical Software, Inc., and filed a Florida fictitious name registration on September 23, 2013 as the owner of the fictitious name BioTrackTHC.

**6.** Although Defendant BioTrackTHC often refers to BioTrackTHC as a "division" of such Defendant, there is no separate incorporation or other separate entity organization that would make BioTrackTHC an entity separate from Bio-Tech Medical Software, Inc. itself or any portion thereof. *(All references herein to **"BioTrackTHC"** mean Defendant Bio-Tech Medical Software, Inc.).*

**7.** Defendant Siegel is the Chairman of the Board of BioTrackTHC, and BioTrackTHC generally refers to him in press releases as its Chief Executive Officer; however, in certain press releases and other documents prepared by BioTrackTHC, BioTrackTHC has referred to Siegel and Defendant Vo as "Co-Chief Executive Officers."

**8.** Defendant Vo has referred to himself as the Co-Chief Executive Officer of BioTrackTHC, although he generally refers to himself as the Chief Operating Officer, and the Chief Financial Officer of BioTrackTHC, which is how he is generally referred to in BioTrackTHC press releases.

**9.** Franwell is engaged in the development, implementation, marketing, and sale of computer software and radio frequency identification ***("RFID")*** systems throughout the world,

with its primary focus on tracking and tracing a wide range of tangible items and developing related reporting systems, including legalized marijuana, fresh food, pharmaceuticals, agricultural based supply chain items, air cargo, and various other tangible property.

**10.** Founded in Plant City, Florida in 1993, for over 21 years Franwell has been engaged in tracking the supply chain of perishable foods, pharmaceuticals, and other sensitive products that require special handling, temperature monitoring, added security, prevention of theft and counterfeiting, and reliable methods of tracking and tracing.

**11.** Plaintiff Franwell is a competitor of Defendant BioTrackTHC in that they offer and sell products and services to government entities in interstate commerce generally described as marijuana seed-to-sale tracking and reporting systems.

**12.** On May 12, 2011, Franwell submitted a written response to a Request For Proposal ***("RFP")*** from the State of Colorado Department of Revenue *(the* ***"Colorado DOR")*** by its Division of Finance and Procurement *(the* ***"Colorado DFP")*** for a Medical Marijuana Inventory Tracking System *(also referred to as a* ***"seed-to-sale tracking and reporting system")*** to be the subject of a competitive contract award by the Colorado DFP on behalf of the Colorado DOR's Medical Marijuana Enforcement Division *(the* ***"Colorado MED")*** for its desired marijuana industry registration and tracking system in Colorado *(the* ***"Colorado Contract")***.

**13.** In addition to the written response to the RFP, the competition for the Colorado Contract included oral in-person presentations by the competing vendors to the Colorado MED.

**14.** Colorado and several other states and countries which have various degrees of legalized marijuana currently use the phrase ***"seed-to-sale tracking and reporting"*** to refer to their systems of monitoring and tracking **(a)** marijuana from its cultivation through its subsequent processing into various product forms, and the sale thereof, and **(b)** the activities of industry

participants engaged in that production, distribution, and *(with respect to medical marijuana)* the prescription and delivery of the various marijuana products.

**15.** Such extensive tracking, registration, required reporting, and monitoring is peculiar to government regulators.

**16.** The micro internal record keeping of industry participants *(the **"private marijuana industry market"**)* of their own marijuana inventories and their own sales data is substantially different from the macro seed-to-sale tracking and reporting systems of government entities engaged in the regulation of the legalized marijuana industry *(the **"regulated marijuana market"**)*.

**17.** Franwell's proposed seed-to-sale tracking and reporting system for Colorado included a combination of RFID and computer software programs to track the legalized marijuana plants and products in that state and to register and monitor persons authorized to engage in the legalized marijuana industry in Colorado.

**18.** Franwell was awarded the Colorado Contract, which was made effective on August 25, 2011.

**19.** The Colorado Contract awarded to Franwell in August 2011 was the first seed-to-sale tracking and reporting contract awarded by a governmental body within the United States, and Franwell's implementation of that system in Colorado was the first such tracking and reporting system to be implemented within the United States.

**20.** As the first state to award such a contract, Colorado was the state where the phrase "seed-to-sale tracking and reporting" originated.

**21.** Franwell's seed-to-sale tracking and reporting system for Colorado initially was referred to by the acronym ***"MITS"*** or ***"mits"*** *(used in both upper and lower case letters)*, as a short form reference to Franwell's "*marijuana inventory tracking system.*"

**22.** The MITS or mits acronym was subsequently changed to the acronym ***"METRC"*** or ***"metrc"*** *(also used in both uppercase and lowercase letters)* as a short form reference to the system Franwell developed for "*marijuana enforcement tracking and reporting compliance.*"

**23.** Plaintiff relied upon common law trademark protection for the words "*MITS*" and ***"METRC"*** in their various forms until Plaintiff obtained a registration of the service mark ***METRC***® from the U.S. Patent and Trademark Office on September 8, 2015.

**24.** Providing seed-to-sale tracking and reporting of legal marijuana to governmental regulators enables such regulators to: **(a)** protect against diversion of the plants and the processed products, **(b)** provide oversight on the charging and collection of taxes as the plants and the processed products are the subject of taxable transfers, **(c)** help assure that medical marijuana is being dispensed to permissible purchasers, and **(d)** promote health protection by providing a network of shared data about the plant and its life cycle so that all tainted plants are quickly and efficiently removed from the supply chain.

**25.** The regulated marijuana market's seed-to-sale tracking and reporting concept is recognized to include registration and reporting systems, with and to government agencies, for growers, processors, and dispensers of legalized marijuana, consultants providing guidance to legalized marijuana industry participants, physicians prescribing medical marijuana, caregivers purchasing medical marijuana for patients, and patients permitted to use medical marijuana.

**26.** The METRC System that originated in Colorado was developed, and has always been administered, by Franwell; and will also be used and administered by Plaintiff in Oregon which awarded Plaintiff its seed-to-sale tracking and reporting contract.

**27.** In the METRC System, a single tag, including both a bar code and an RFID tag, is placed on each new legally authorized marijuana plant to track the plant's growth and subsequent processing, followed by another tagging of the processed marijuana product through its distribution and final sale.

**28.** The information obtained from the RFID tags and bar codes on the marijuana plants and product packages is transmitted electronically *(wirelessly)* to a remote computer server where the information is integrated into the applicable government agency's existing information technology structure. This enables such agency to electronically follow the legal marijuana supply chain from licensed growers to licensed dispensaries to medical and recreational purchasers.

**29.** At this time, twenty-three states in the United States and the District of Columbia have enacted laws to legalize some degree of medical marijuana, resulting in a substantial and increasing demand over the past four years for oversight technology to ease the burden of tracking marijuana for proper distribution, consumption, and accountability.

**30.** Franwell has limited its offers of software and RFID services and products to government agencies regulating multitudes of industry participants in the macro market, and any Franwell offers and sales of such services and products to persons other than government agencies are made only as integral parts of the existing or expected contract terms with such government agencies.

**31.** In contrast to Franwell, BioTrackTHC offers and sells marijuana business software products in two distinctly different markets.

**32.** BioTrackTHC's initial marijuana industry products and services involved enterprise software programs sold in the private marijuana industry market, on a micro basis, to growers, dispensers, and other service providers. This is substantially different from the product and service it subsequently added to its business when it was awarded a government contract by the State of Washington to develop a seed-to-sale tracking and reporting system covering all the many licensees of that state.

**33.** The Washington State contract resulted in the first BioTrackTHC macro product, which Washington regulators referred to as a "Seed to Sale Inventory Tracking System," by adopting the "seed-to-sale" phrase that originated in Colorado.

**34.** Government regulators and procurement officers in states within the regulated marijuana market are undertaking new tasks in a new legalized marijuana industry in the selection, development, and implementation of each such state's macro "seed-to-sale tracking and reporting" system, involving the registration, monitoring, required reporting, and other regulation of the multitude of industry participants in those states.

**35.** In contrast to such regulatory macro systems, the industry participants who engage in marijuana production, processing, and distribution typically use distinctly different micro inventory control systems and point of sale ***("POS")*** systems to manage their own production and distribution.

**36.** Franwell, BioTrackTHC, and other technology system providers are engaged in vigorous competition in the regulated marijuana market for the awarding of government contracts to develop **(a)** technology systems to track and trace legalized medical and recreational marijuana

from its cultivation by a vast array of growers through its processing and sale in its various product forms by large numbers of processors and dispensers; and **(b)** provide required reporting mechanisms for all such industry licensees to the applicable state agency.

**37.** Information concerning the capabilities and achievements of the competing vendors that is provided to and obtained by government procurement officials *(who assess the capabilities of such competing vendors, evaluate them, and award a seed-to-sale tracking and reporting system contract to a vendor)* is a vital aspect of the decision making process of such government procurement officials.

**38.** Such information is provided to those officials directly in competitive responses to RFPs, interviews, and other oral presentations by the competing technology providers.

**39.** Such information also is provided to and retrieved by those officials indirectly by the providers' **(a)** websites and other Internet postings, **(b)** press releases, **(c)** YouTube audio-videos, **(d)** televised and radio interviews *(of their executives)*, and **(e)** other publicity efforts of various forms.

**40.** BioTrackTHC has made and continues to make extensive use of indirect means of providing information to government procurement officials through its website and other Internet postings that include the display of, and links and tabs to provide access to: **(a)** press releases, **(b)** YouTube audio-videos, **(c)** televised and radio interviews *(of their executives)*, and **(d)** other publicity efforts of various forms.

**41.** That indirect information is invited by government regulators in their RFPs, such as the States of Washington, Illinois, Hawaii and Alaska. Washington requires any company responding to a RFP fill out a "Proposer Information" form, which requests the website URL. Hawaii, which is currently considering responses to its November 19, 2015 RFP for a seed-to-sale

inventory tracking system, included a "VENDOR PROFILE" page as an Exhibit A, in which it asked for the "Website Address" of the responding vendor and also the "Website Address" of any parent company. In the currently outstanding Alaska RFP for a seed-to-sale inventory tracking system, issued on December 7, 2015, Alaska pointed out in Section 6.01:

> *In order to provide potential providers the opportunity to include additional information, the number of pages that may be included in the Appendices and* ***links to websites are not limited . . . .***

*[emphasis added];* A true and correct copy of the RFPs are attached hereto and incorporated herein as **Composite Exhibit "A."**

**42.** After submitting such indirect information, BioTrackTHC was awarded the contracts in the States of Washington and Illinois.

**43.** The very recent legalization of both medical and recreational marijuana in twenty-three states within the United States, the District of Columbia, and certain foreign countries is complicated by numerous legal prohibitions and conflicting views on what should be allowed and uncertainties as to what regulatory measures are needed. This uncertainty has encouraged government procurement officials to resort to the Internet in order to be informed of the most recent developments in this fast developing regulatory environment.

**44.** Due to the foregoing developments and the actions of the Defendants described in the counts below, Franwell has found it necessary to retain the law firm of Mechanik Nuccio Hearne & Wester, P.A. and has agreed to pay the firm its reasonable fees to protect Franwell's interests.

**COUNT I**
**FALSE ADVERTISING**
**SECTION 43(a)(1)(B) OF THE LANHAM ACT**
**15 U.S.C. § 1125(a)**

**45.** This is an action for false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a).

**46.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44 as though fully set forth herein.

**47.** Defendants falsely represented on their website that they were the ***"first in the world"*** to track marijuana through the entire supply chain, that they sold the ***"first marijuana/cannabis seed-to-sale system in the United States,"*** that they owned the ***"first real-time monitoring system in the United States,"*** that they ***"sold the first marijuana seed-to-sale tracking system and are the largest seed-to-sale vendor in the world,"*** that they developed the ***"only true marijuana seed-to-sale tracking software system for industries and the nation,"*** and that their system is the ***"only one with controls to prevent bad product from getting onto retail shelves."***

**48.** In order to further deceive, mislead and confuse government consumers, Defendants have equated the government regulatory phrase ***"seed-to-sale"*** inventory tracking and reporting in the macro regulated marijuana market with a phrase they use to refer to the micro private marijuana industry market in order to give a false appearance of greater experience and substantially more customers in the macro regulated marijuana market in competing for government contracts, by treating the enterprise software and POS software BioTrackTHC sells to marijuana growers, processers, and dispensers as ***"seed-to-sale"*** inventory tracking and reporting products and services.

**49.** Such distortions of the phrases used to describe macro industry experience *(intended to prevent diversion, to account for taxable transactions, and to protect public health)* have enabled Defendant BioTrackTHC to score competitive points in the evaluations by government procurement graders, as was specifically acknowledged to Franwell by representatives of New York State in a debriefing conference after that state designated BioTrackTHC as the winner in the competition for its ***"seed-to-sale"*** tracking and reporting contract.

**50.** Defendants further falsely advertised that their seed-to-sale tracking system involves patented technology, which is literally false.

**51.** Defendants' manipulation and distortion of industry terms and false statements misrepresent the characteristics of their software products while falsely disparaging Franwell's competing software and further enhanced RFID products.

**52.** These statements include those in its press releases, broadcasts, interviews, and website, which make false, confusing, deceptive, and misleading claims that BioTrackTHC:

- **(a)** released *"the World's First Official Seed-To-Sale Traceability System API"* [in a November 19, 2013 PRNewswire release];
- **(b)** enabled Washington State's *"oversight and enforcement agency to be the first in the world to track marijuana through the entire supply chain from seed-to-sale."* [in a November 19, 2013 PRNewswire release];
- **(c)** is *"the first* [marijuana seed-to-sale] *system of its type in the US"* [in a December 13, 2013 Internet posting by Fox News of a television interview of Defendant Vo];
- **(d)** was the *"first state seed-to-sale real-time monitoring system in the United States"* [in the Miami Herald on multiple occasions];

(e) will be the *"first state cannabis seed-to-sale real-time monitoring system in the United States"* [In a December 2, 2014 television interview on CCTV America and in an Internet posting of that interview];

(f) *"developed . . . the nation's only true marijuana seed-to-sale tracking system"* [in a February 13, 2013 PRNewswire release];

(g) is *"the nation's only true seed to sale software system"* [in a February 3, 2015 PRNewswire release];

(h) is the *"industries only true seed-to-sale Medical Marijuana Software"* [highlighted on virtually every page on the BioTrackTHC website];

(i) is *"The Only Seed to Sale Solution"* [on the BioTrackTHC website and under its name in its logo on its various documents];

(j) *"is powering ... more regulated marijuana dispensaries than any other software platform available today."* [2014 posting on Crowdfunder.com];

(k) is *"the most extensively-used seed-to-sale enterprise system in the marijuana industry"* [in a December 2, 2014 PRNewswire release];

(l) is the *"world's largest Seed to Sale Solution deployed in more than 800 locations in 15 states, Washington, D.C., Canada, & South America."* [in a December 2, 2014 PRNewswire release];

(m) *"developed the country's first real-time, full seed-to-sale state monitoring system"* [in a March 17, 2015 Broward Palm Beach New Times]; and

(n) *"[is the only] system of controls preventing bad product from getting onto retail shelves"* – [in a March 17, 2015 Broward Palm Beach New Times].

True and correct copies of BioTrackTHC's press releases, broadcasts, interviews, and website are attached hereto and incorporated herein as **Composite Exhibit "B."**

**53.** Prior to their making each of the above statements asserting that BioTrackTHC was the first and the only marijuana seed-to-sale tracking system not only in the nation, but also in the world, Defendants were well aware that Franwell provided and continues to provide the

State of Colorado with the METRC System as the nation's first established seed-to-sale tracking system.

**54.** Prior to making each of the above statements regarding BioTrackTHC being the first, the only, and the largest seed-to-sale tracking system not only in the nation, but also in the world, Defendants were well aware that Franwell provided and continues to provide the nation's first established seed-to-sale tracking and reporting system with controls to detect bad product.

**55.** Defendants knew that Franwell's seed-to-sale tracking and reporting system is operational in more than 2,200 locations and that BioTrackTHC's own customer base was substantially less with only the 800 locations claimed by it.

**56.** Defendants' statements that BioTrackTHC was the first, the only, and the largest seed-to-sale tracking and reporting system in the world are literally false.

**57.** Many of these statements can be found on BioTrackTHC's website in the page devoted to press releases, the page devoted to news clips, its blog page, and in other postings, all located at the URL: www.biotrackthc.com.

**58.** The government consumers request the vendor's website URL so they may learn more about each vendor through the information on its website. *See* **Composite Exhibit "A."**

**59.** BioTrackTHC's website includes an article from an Internet publication called Marijuana Investor News *(or simply **"MJI News"**)* that quotes Defendant Siegel making the following false, deceptive, and misleading representations regarding the United States Drug Enforcement Administration ***("DEA")***:

> *In a recent interview with MJINews, Steven Siegel, CEO of BioTrackTHC, explained how the company's "technology came from biometric e-prescribing, which we have* ***three*** *issued patents on so we [built] this technology that tracks marijuana off of a database that was approved by the DEA."*

*[emphasis added]*. A true and correct copy of the MJI article is attached hereto and incorporated herein as **Exhibit "C."**

**60.** Such statements displayed on BioTrackTHC's website deceptively indicates that BioTrackTHC has three issued patents on its marijuana seed-to-sale software, when in fact it has no patents on its marijuana seed-to-sale software.

**61.** The United States Patent and Trademark Office records reflect only two patents assigned to Defendant BioTrackTHC by Defendant Siegel, each of which have the same title, and neither of which relate to marijuana seed-to-sale tracking or reporting.

**62.** The above Siegel quote displayed on the BioTrackTHC website perpetuates the deception even further by relating the three patents to an alleged DEA approval of BioTrackTHC's biometric e-prescribing software.

**63.** The DEA is prohibited and has not provided any approval to BioTrackTHC's biometric e-prescribing software.

**64.** A posting on BioTrackTHC's website on April 7, 2015 reveals an article titled, "*How Passion and early Insight are Driving BioTrackTHC*," that asserts the following recognition by the DEA in paragraph three: "*The original company gained the attention of the DEA...with its BioScriptRx.*" A true and correct copy of the April 7 posting is attached hereto and incorporated herein as **Exhibit "D."**

**65.** Another article on BioTrackTHC's website titled "*Fort Lauderdale's BioTrackTHC Helps Marijuana Sellers Track Inventory*," published on March 17, 2015, contains the following false statements referencing the DEA. Paragraph sixteen begins with *"[i]mpressed by the efficacy of the software, the DEA called Siegel and said it wanted to model a tracking system around BioTech's model.*"

**66.** Paragraph seventeen quotes Siegel stating "*Because we're the ones the DEA wrote the rule changes around, we secured patents around it really quick.*"

**67.** Paragraph eighteen then boldly claims that "*Bio-Tech had previously been given something of a seal of approval from the DEA.*" A true and correct copy of the March 17 Article is attached hereto and incorporated herein as **Exhibit "E."**

**68.** These misleading, deceptive and false statements are intended to falsely imply that the DEA has endorsed BioTrackTHC's software system with a stamp of approval from the DEA.

**69.** The seal of approval BioTrackTHC alleges from the DEA is of great significance since the DEA is the federal administrative agency responsible for maintaining the list of drug classification ranked by their potential for abuse, and marijuana is classified as a Schedule I drug, which is the category of drugs with the highest potential for abuse.

**70.** These BioTrackTHC statements concerning the DEA are specific in that they reference BioTrackTHC's software and their patents, in an effort to promote BioTrackTHC's seed-to-sale tracking software, which has nothing to do with BioTrackTHC's patents.

**71.** Concerned about the federal classification and criminalization of marijuana use, state government workers assigned to administer marijuana legalization programs in their states can be unduly influenced by a company who claims to already hold the federal government's endorsement and approval.

**72.** BioTrackTHC's alleged DEA support is the type of false advertisement that the state government consumers readily rely on when considering competitors for contract awards for such states' proposed marijuana tracking and reporting systems.

**73.** Defendants further confuse, mislead and deceive government consumers with false statements regarding their RFID capabilities.

**74.** BioTrackTHC's website contains the following misleading and deceptive information:

> **(a)** *BioTrackTHC Commercial POS System features smart technology such as barcodes and radio frequency identification that responds to every transaction made*;
>
> **(b)** *We are RFID Ready and capable!;*
>
> **(c)** *RFID Capable*; and
>
> **(d)** *Does BioTrackTHC use RFID Technology? Yes.*

True and correct copies of these false RFID statements found on BioTrackTHC's website are attached hereto and incorporated herein as **Composite Exhibit "F."**

**75.** BioTrackTHC does not have RFID technology in its point of sale ***("POS")*** system.

**76.** BioTrackTHC's computer software and POS System do not have any RFID component.

**77.** No RFID readers or RFID antennas are provided or controlled by BioTrackTHC at the POS, and BioTrackTHC does not operate or provide any RFID readers, RFID antennas or other RFID technology to any consumer whatsoever.

**78.** In a recent article *Marijuana Edibles: Update on a Rapidly Developing Market*, the Defendants were quoted throughout and provided pictures with captions which, in part, read: *"RFID tags as part of the traceability system of BioTrackTHC,"* and *"RFID tags on drying marijuana flowers, from BioTrackTHC."* A true and correct copy of the article is attached hereto and incorporated herein as **Exhibit "G."**

**79.** These pictures actually contain Franwell's RFID tags in Colorado and falsely portray BioTrackTHC as having such RFID component in its seed-to-sale tracking and reporting system, which is simply not true.

**80.** In Colorado, the licensed marijuana growers and dispensers who purchase enterprise software from BioTrackTHC to assist in the various aspects of their business are subjected to RFID tracking provided by Franwell's METRC System, not BioTrackTHC, who is falsely attributing Franwell's RFID tracking to something BioTrackTHC provides.

**81.** These false statements are not only posted on Defendant's website, BioTrackTHC aggressively publishes literally false statements in their responses to RFPs to contrast BioTrackTHC's systems to Franwell's.

**82.** In BioTrackTHC's written response to the RFP of the State of Illinois, BioTrackTHC made the following false, misleading and deceptive statement about Colorado and thereby Franwell, by virtue of Franwell's METRC System used in Colorado: "*Due to the limitations of the technology the Marijuana Enforcement Division employs and its inability to accept real-time data, BioTrackTHC has made significant enhancements to correlating and cross-referencing the required daily reporting data against the actual real-time records.*" A true and correct copy of BioTrackTHC's Response to Request for Proposal, RFP#22034647 is attached, in relevant part, hereto and incorporated herein as **Exhibit "H."**

**83.** Based on Defendants' false, misleading and deceptive statement, Franwell subsequently lost the contract award by the State of Illinois to BioTrackTHC.

**84.** The METRC System used in Colorado captures test results and reporting by licensees in real time and automatically holds product from moving through the system until tests have been passed.

**85.** Furthermore, the system requires that even the test packages be tracked in real-time and manifested.

**86.** In addition, the METRC System in its current form is able to calculate tax obligations in real time.

**87.** Defendants have published statements as to BioTrackTHC "*patents*," "*DEA approval*," "*being RFID capable*," and being the "*only real-time monitoring system*" in a manner intended to mislead and deceive government procurement representatives that BioTrackTHC has patented technology, federal government approvals, RFID technology, and the only real-time system as it relates to its marijuana seed-to-sale tracking and reporting.

**88.** The impressions created by such intellectual property technicalities presented by Defendants on Defendant BioTrackTHC's website are intended to deceive government consumers, have already deceived them, and are likely to continue to do so.

**89.** Defendants' false statements that BioTrackTHC was the first, the only, and the largest seed-to-sale tracking and reporting system in the world, coupled with false representations of patented and DEA approved technology, had the capacity to deceive and did deceive government consumers charged with selecting the best available marijuana tracking and reporting technologies in the regulated marijuana market.

**90.** The false statements to promote BioTrackTHC and to criticize Franwell resulted in marijuana seed-to-sale tracking and reporting contract awards to BioTrackTHC by the States of Washington, New Mexico, New York, and Illinois.

**91.** As a result of Defendants' false, deceptive and misleading advertisements made in bad faith, Plaintiff has suffered and continues to suffer serious injury in the form of loss of government contracts to BioTrackTHC in bid proposals, loss of the perpetual sales that result from such contracts, loss of market share, loss of goodwill, increased promotional costs, lost profits, and injury to its reputation.

**92.** Plaintiff is irreparably injured as a result of Defendants' misrepresentations in its false, deceptive and misleading advertisements.

WHEREFORE, Plaintiff, Franwell, Inc., demands judgment against Bio-Tech Medical Software, Inc. d/b/a BioTrackTHC, Steven Siegel, and Patrick Vo for violation of Section 43(a)(1)(B) of the Lanham Act; 15 U.S.C. § 1125(a) and request this Court:

**(a)** temporarily enjoin Defendants from circulating any false, deceptive or misleading descriptions of fact or representations of fact, with respect to any aspect of their seed-to-sale tracking and reporting system product and by restraining their use of representations of any indication that their product is the only true, the first, the only, or the largest seed-to-sale tracking and reporting system in the world, that Defendant BioTrackTHC has obtained any recognition from the DEA that would relate to BioTrackTHC's seed-to-sale tracking and reporting systems, that there is any current "patent" coverage, applicability, or protection with respect to BioTrackTHC's seed-to-sale tracking and reporting technology, that BioTrackTHC's products and services include RFID components, or that Franwell's METRC System in Colorado does not involve real time tracking and reporting during the pendency of this case;

**(b)** permanently enjoin Defendants who have or are otherwise likely to circulate any false or misleading description of fact, or false or misleading representation of fact, with respect to any aspect of their seed-to-sale tracking and reporting system product and by restraining their use of words suggesting that their product is the only true, the first, the only, and the

largest seed-to-sale tracking and reporting system in the world, that Defendant BioTrackTHC has obtained any recognition from the DEA that would relate to BioTrackTHC's seed-to-sale tracking and reporting systems, or that there is any current "patent" coverage, applicability, or protection with respect to BioTrackTHC's seed-to-sale tracking and reporting technology, that BioTrackTHC's products and services include RFID components, or that Franwell's METRC System in Colorado does not involve real time tracking and reporting;

**(c)** award actual damages suffered by reason of Defendants' false advertising, consisting of Plaintiff's loss of government contracts to Defendant BioTrack THC in bid proposals, loss of the perpetual sales that result from such contracts, lost market share, loss of goodwill, increased promotional costs, lost profits, and injury to its reputation;

**(d)** award Plaintiff three times the amount found as actual damages pursuant to 15 U.S.C. § 1117(a);

**(e)** award Plaintiff all profits of Defendant BioTrackTHC derived from the false advertising of their seed-to-sale tracking and reporting system product;

**(f)** award attorneys' fees pursuant to 15 U.S.C. § 1117(a);

**(g)** award Plaintiff's cost incurred in bringing this action;

**(h)** order materials that contain the false advertisement be delivered up and destroyed pursuant to 15 U.S.C. § 1118; and

**(i)** grant such other and further relief as the Court deems just and equitable.

**COUNT II**
**FALSE MARKING – 35 U.S.C. § 292**

**93.** This is an action for false marking pursuant to 35 U.S.C. § 292.

**94.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44, as though fully set forth herein.

**95.** Defendants have falsely used in advertising the words "*patent*" and "*patented*" implying that their marijuana seed-to-sale tracking and reporting system involves patented technology.

**96.** BioTrackTHC has falsely advertised that they hold two U.S. Patents, numbered 8,086,470 and 8,335,697, which cover their seed-to-sale tracking and reporting system.

**97.** U.S. Patents 8,086,470 and 8,335,697 are not applicable to the marijuana seed-to-sale tracking and reporting system being used by BioTrackTHC's customers, including the State of Washington.

**98.** U.S. Patents 8,086,470 and 8,335,697 were filed on February 12, 2009 and August 4, 2010, respectively. A true and correct copy of the United State Patents are attached hereto and incorporated herein as **Composite Exhibit "I."**

**99.** Defendant Siegel is listed as the inventor of both patents and Bio-Tech Medical Software, Inc. is listed as the assignee of both patents.

**100.** The two patents are related and together comprise a system that uses fingerprinting, retinal scanning, or other identifier to cross-reference patients with doctors and pharmacies for investigation or prosecution of doctor shopping in the "pill mill" arena.

**101.** These patents have no application to marijuana seed-to-sale tracking and reporting.

**102.** Even though neither patent involves any aspect of BioTrackTHC's seed-to-sale tracking and reporting system, Defendants continue to falsely indicate that their patents apply to their marijuana seed-to-sale tracking and reporting system.

**103.** Since Defendants Siegel and BioTrackTHC have intimate knowledge of these patents as inventor and assignee, their improper assertions and implications of the applicability of these patents to BioTrackTHC's marijuana seed-to-sale tracking and reporting system can only be described as an intentional deception of the public.

**104.** In addition to the above false, deceptive, and misleading information included on BioTrackTHC's website, it includes an article from an Internet publication called Marijuana Investor News *(or simply **"MJI News"**)* making the following false, deceptive, and misleading representations involving the United States Drug Enforcement Administration ***("DEA")***:

> *In a recent interview with MJINews, Steven Siegel, CEO of BioTrackTHC, explained how the company's "technology came from biometric e-prescribing, which we have **three** issued patents on so we [built] this technology that tracks marijuana off of a database that was approved by the DEA."*

[*emphasis added]*. *See* **Exhibit "C."**

**105.** Such statements displayed on BioTrackTHC's website deceptively indicate that BioTrackTHC has **three** issued patents on its marijuana seed-to-sale software, when in fact it has no patents on its marijuana seed-to-sale software.

**106.** The United States Patent and Trademark Office records reflect **two** patents assigned to Defendant BioTrackTHC by Defendant Siegel, each of which have the same title, and neither of which relate to marijuana seed-to-sale tracking or reporting.

**107.** The use of the words "patent" and "patented" by Defendants was intended to deceive and did deceive government procurement staff when used in several press releases and

other Internet media to describe BioTrackTHC's non-patented seed-to-sale tracking and reporting system.

**108.** In two press releases regarding a collaboration with Medbox, Inc., a publicly owned company with whom BioTrackTHC was then affiliated, BioTrackTHC further engaged in the publication of false representations as to BioTrackTHC's patent protections of its seed-to-sale tracking and reporting system.

**109.** In the first BioTrackTHC press release that describes its relationship with Medbox, BioTrackTHC discussed in the first paragraph its patented technology as if it were applicable to both tracking certain unrelated medications and marijuana and then cited the patent numbers. A true and correct copy of the joint press release with Medbox listing its patent numbers is attached hereto and incorporated herein as **Exhibit "J."**

**110.** BioTrackTHC perpetuated its false marking of its seed-to-sale software for tracking of marijuana by subsequently disseminating a February 14, 2013 press release that appeared in an article in the Boston Business Journal. Those misrepresentations in the Boston Business Journal included the announcement by BioTrackTHC that its *"patented technologies"* was involved in its *"marijuana 'seed-to-sale' tracking system."* A true and correct copy of the second press release is attached hereto and incorporated herein as **Exhibit "K."**

**111.** The Boston Business Journal article, in which BioTrackTHC was referred to by its actual corporate name Bio-Tech Medical Software, Inc. or simply ***"Bio-Tech,"*** includes the following false assertion that the BioTrackTHC [Bio-Tech] seed-to-sale tracking and reporting system involves a patented technology: *"Bio-Tech brings two distinct, patented technologies to the table: BioTrackTHC – a marijuana 'seed-to-sale' tracking system and . . . ."*

**112.** In addition, Defendant Siegel's LinkedIn profile currently begins with the words *"Regulatory BioTrackTHC and compliance Government marijuana tracking and reporting."*

**113.** Until recently, Siegel's profile also claimed that BioTrackTHC's *"unique technology products are patent protected"* and it listed one patent number and said another patent is to be issued, also pointing out that Siegel has assigned his patent rights to BioTrackTHC. A true and correct copy of Siegel's previous LinkedIn profile page is attached hereto and incorporated herein as **Exhibit "L."**

**114.** On December 18, 2014, BioTrackTHC issued a press release announcing it had engaged Viridian Capital & Research as a Financial Advisor. A true and correct copy of the press release is attached hereto and incorporated herein as **Exhibit "M."**

**115.** This press release states that *"BioTrackTHC has been issued two U.S. patents covering its 'seed to sale' software platform"* and is posted on BioTrackTHC's website.

**116.** Defendants' false use in advertising of the words "patent" and "patented" to describe the non-patented marijuana seed-to-sale tracking and reporting system was done in bad faith.

**117.** Defendants' false use in advertising of the words "patent" and "patented" to describe the non-patented product was done on more than one occasion with each occasion constituting a separate offense of 35 U.S.C. § 292.

**118.** Defendants have published the "patent issuance" and "DEA approval" in a manner intended to mislead and deceive government procurement representatives that BioTrackTHC has patented technology and federal government approvals that relate to its marijuana seed-to-sale software.

**119.** Due to BioTrackTHC's false marking, Franwell has lost the contracts to provide its seed-to-sale tracking and reporting system to the States of Washington, New York and Illinois, which were awarded to BioTrackTHC based on false information.

**120.** Franwell has and is currently allocating valuable resources to refute BioTrackTHC's false advertisement of "patented" technology in competition to win contracts with the States of Alaska and Hawaii, municipalities in the State of California, and the Country of Jamaica.

**121.** As a direct result of Defendants' actions, Franwell suffered and continues to suffer damages in lost sales, loss of market share, loss of goodwill, increased promotional costs, and lost profits.

WHEREFORE, Plaintiff, Franwell, Inc., demands judgment against Bio-Tech Medical Software, Inc. d/b/a BioTrackTHC, Steven Siegel, and Patrick Vo for false marking in violation of 35 U.S.C. § 292 and request this Court:

**(a)** award compensatory damages consisting of lost sales, lost market share, loss of goodwill, increased promotional costs, and lost profits;

**(b)** award Plaintiff's attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

**(c)** grant such other and further relief as the Court deems just and equitable.

**COUNT III**
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**

**122.** This is an action for tortious interference with contracts between Franwell and the State of Colorado, a potential contract between Franwell and the Country of Jamaica, and a potential contract between Franwell and the State of Florida.

**123.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44 as though fully set forth herein.

**124.** The contracts between Plaintiff and the State of Colorado are valid contracts that conferred a legal right on Plaintiff to provide the computer software program and RFID tracking system that are included in the METRC System to capture industry data and track each event involved in legal marijuana plants from the growing stage through harvest, subsequent processing, packaging, and eventual sale.

**125.** Defendants knew that Franwell was awarded the Colorado Contract on August 25, 2011.

**126.** BioTrackTHC representatives in Colorado falsely and maliciously told marijuana growers and dispensers licensed as such by that State ***("Colorado Licensees")***, to whom BioTrackTHC sells enterprise software used to report to that State through the METRC System, that *"Franwell continues to keep changing their import instructions and it has caused all kinds of problems,"* and that *"Franwell is not being supportive or providing documentation."*

**127.** Some of these Colorado Licensees, who as BioTrackTHC customers had been told by BioTrackTHC that their reporting problems were caused by Franwell, complained to the Director of the Colorado Marijuana Enforcement Division that their reporting problems were caused by the Franwell METRC System.

**128.** These false and malicious statements were repeated to a Franwell employee, Cathy Jolley ***("Jolley")***, on February 14, 2014 by L'Eagle Services, LLC ***("L'Eagle")***, a Colorado Licensee and enterprise software customer of BioTrackTHC.

**129.** As a result, Jolley contacted BioTrackTHC in an effort to resolve the problems that L'Eagle was having with the METRC System and spoke with BioTrackTHC's employee, Eddie Thomas **("Thomas").**

**130.** Speaking to Jolley as if she were an employee of L'Eagle, Thomas said that the problem was caused by Franwell's METRC System and not by BioTrackTHC's software program.

**131.** Thomas mistakenly believed that Jolley was an employee of L'Eagle.

**132.** In the telephone conversation on February 14, 2014, Thomas began by making disparaging remarks about Franwell and then stated that "*Franwell continues to keep changing their import instructions and it has caused all kinds of problems,*" and that "*Franwell is not being supportive or providing documentation.*"

**133.** On several occasions, Defendants have met and spoken with governmental officials of the State of Colorado to discuss providing BioTrackTHC software to replace Franwell's METRC system.

**134.** Further, in January 2015, Defendant Vo sent an email to the Director of the Colorado Marijuana Enforcement Division that included a copy of Vo's prior email memo to Colorado State Senator Owen Hill *(copying Steven Siegel and other persons)* which included the following false, malicious and disparaging statements about Franwell's METRC system operating under the Colorado Contract:

> *"Colorado is neither capturing nor able to report on any meaningful marijuana industry data, medical or recreational. Not only is the software system utilized by the Colorado Marijuana Enforcement Division (MED) wholly inadequate for tracking marijuana from seed-to-sale, computing tax obligations, etc., it is highly unlikely that it will be able to capture laboratory testing data even though the state started ordering testing in the Spring.*
>
> *This is not the fault of the MED. The MED awarded a contract for a marijuana tracking system before true marijuana seed-to-sale technology was available, and so the contract was awarded to a company that has zero experience in marijuana tracking. As a result,*

*Colorado has a system that cannot capture or produce the data the State needs to promote public safety, prevent diversion, enforce regulations, or collect taxes.*

* * *

*Per your discussion with Steven Siegel, CEO, we would be happy to have further discussions with you to see what can be done to possibly replace the current system with the proven system utilized by the State of Washington*

A true and correct copy of Vo's January 2015 email is attached hereto and incorporated herein as **Exhibit "N."**

**135.** Defendant Vo makes it clear that the email was sent as a follow up to Defendant Siegel's discussion to "replace the current system" in Colorado, which is Franwell's METRC System.

**136.** In response to the intentional interference with Franwell's established business relationship and contract with the State of Colorado by Defendants Vo, Siegel, and BioTrackTHC, it was necessary for Franwell to hire the undersigned law firm to protect its interest, repair and restore its relationship with the Colorado MED and have its Chief Executive Officer travel to Colorado to meet with government officials.

**137.** Promptly following Vo's email, on January 14, 2015, Franwell's counsel sent a cease and desist letter to BioTrackTHC, Vo, and Siegel demanding they cease interfering in Franwell's business relationship with the Colorado MED and retract the statements made in Vo's email to Senator Owen Hill and the director of the Colorado MED. A true and correct copy of the demand is attached hereto and incorporated herein as **Exhibit "O."**

**138.** Contrary to the above BioTrackTHC allegations, the software program included in the METRC System developed and operated by Franwell has enabled Colorado to capture a

wide array of meaningful industry data since its implementation in December 2013 and to track every event for every legal marijuana plant through harvest and every package through sale.

**139.** The various types of marijuana testing functionality set by Colorado have been operational under the METRC System from the date of every deadline set by the State.

**140.** The METRC System has been capturing test results in real time and has automatically held product from moving through the system until tests have been passed.

**141.** Furthermore, the system requires that even the test packages must be tracked in real-time and manifested.

**142.** In addition, the METRC System, in its current form, is able to calculate tax obligations in real time.

**143.** Defendants intentionally and unjustifiably made the false statements listed in paragraph 134 above to the Director of the Colorado MED in an effort to interfere with the business relationship between the State of Colorado and Franwell.

**144.** Defendants also knew that Franwell had a business relationship with the Country of Jamaica and was making efforts to enter an agreement with the Country of Jamaica for a seed-to-sale tracking and reporting system.

**145.** In March 2015, Franwell submitted to the Jamaica Ministry of Industry, Investment and Commerce a comprehensive proposal of ways to regulate medical ganja in Jamaica using Franwell's technology, along with comprehensive comparative data from states in the United States entitled "Regulatory Footprint" and has been submitting updated versions of such "Regulatory Footprint" ever since.

**146.** Franwell initiated its relationship with the Country of Jamaica when it engaged Wanda James **("James")**, President of Cannabis Global Initiative, to aid Franwell in its bid for a

government contract in Jamaica; and in that capacity she introduced Franwell to government officials in Jamaica and advocated Franwell's seed-to-sale tracking and reporting system.

**147.** Franwell was subsequently required to terminate its engagement with James because she applied for an industry license with Colorado, creating a conflict of interest under Franwell's Colorado Contract that could only be cured by Franwell terminating its engagement of James.

**148.** Following such termination, James and BioTrackTHC entered into business relationship; and as a representative of BioTrackTHC, James immediately began a campaign to discredit Franwell and promote BioTrackTHC and its seed-to-sale tracking and reporting system in Jamaica.

**149.** In April 2015, Defendants, through their agent, James operating as Cannabis Global Initiative, intentionally and unjustifiably made false statements to the Minister of Justice of Jamaica in an effort to interfere with the business relationship between the Country of Jamaica and Plaintiff.

**150.** In an April 22, 2015 press release, BioTrackTHC *"announced that it has retained Cannabis Global Initiative (CGI) to expand the reach of BioTrackTHC's cannabis tracking technology to new domestic and international regions."* CGI is a Colorado limited liability company with an office in Jamaica. That same April 22, 2015 press release included the following quote: *" 'CGI and its president, Wanda James, are primary movers in this sector and we know that this agreement will bolster BioTrackTHC's already rapidly growing business,' said Steven Siegel, CEO, BioTrackTHC."* A true and correct copy of the April 22, 2015 press release is attached hereto and incorporated herein as **Exhibit "P."**

**151.** On April 23, 2015, James sent an email memo to Senator Mark Golding, Minister of Justice of Jamaica, telling Minister Golding that *"BioTrackTHC is now officially in New Mexico,"* after that state awarded BioTrackTHC a cannabis tracking contract. Franwell did not respond to New Mexico's RFP and did not compete for a cannabis tracking contract in New Mexico.

**152.** In her April 23, 2015 email memo to Minister Mark Golding, James, as an agent of BioTrackTHC, said "BioTrackTHC is now officially in New Mexico" indicating that Franwell lost a bid for that contract whereas Franwell did not compete for that contract. She then falsely stated that BioTrackTHC has *"beaten Franwell in each of the states they have competed for the contracts"* as if the New Mexico award to BioTrackTHC together with the Washington State award gave BioTrackTHC a record of beating Franwell in two states where they competed against each other. However, at that time, Washington State was the only state where BioTrackTHC had been awarded a state contract in competition with Franwell. A true and correct copy of the April 23, 2015 email memo from James to Minister Mark Golding is attached hereto and incorporated herein as **Exhibit "Q."**

**153.** In her April 23, 2015 email, James also included three live links to 2014 news stories that distorted the regulatory achievements of Franwell in Colorado in contrast to those of BioTrackTHC in Washington State. She maliciously asserted that there is a lack of recorded data on the identification of contaminated marijuana in the Colorado regulatory system, where Franwell's system is in use, in contrast to public availability of such data in Washington State, where BioTrackTHC's system is in use. Such data unavailability in Colorado regulatory system is untrue, and such data availability in Washington State also is untrue.

**154.** Since James had previously represented Franwell in Jamaica, she had intimate knowledge of Franwell's METRC System in Colorado, the fact that Franwell had not competed for a contract with New Mexico, and the fact that BioTrackTHC had not been awarded any government contract in competition with Franwell other than Washington State at the time of her April 23, 2015 email.

**155.** On behalf of BioTrackTHC, James intentionally and maliciously made knowingly false statements in her email to Minister Golding concerning Franwell's METRC System and BioTrackTHC's competition with Franwell for government contract awards.

**156.** As a result of the interference with Franwell's exisiting business relationship with the Country of Jamaica, Franwell's opportunity to obtain a seed to sale tracking and reporting contract with Jamaica has been delayed and jeopardized.

**157.** Defendants' and their agent's actions, in publically, methodically, and persistently disseminating false and deceptive statements, and in doing so specifically and directly to government employees and officials in the State of Colorado and the Country of Jamaica, were wanton, willful, and recklessly indifferent to the rights of Plaintiff.

**158.** In Florida, BioTrackTHC has been methodically using live links to the 2014 news stories that distorted the contaminant marijuana recording of Colorado and Franwell in contrast to achievements by Washington State and BioTrackTHC in such contaminant marijuana recording, as evidenced by an email memo from BioTrackTHC's Executive Vice President Gary Greenwood to Patricia Nelson, Executive Director of Office of Compassionate Use of the Florida Department of Health ***(the "Greenwood email").*** The Greenwood email, which was retrieved from the Florida website: http://www.floridahealth.gov/programs-and-services/office-of-

compassionate-use/_documents/comments-20141230-20150204_part2.pdf, is attached hereto and incorporated herein as **Exhibit "R."**

**159.** Defendants BioTrackTHC, Siegel, and Vo each directly and indirectly, have publically, methodically, and persistently disseminated the false and deceptive statements referred to above and continue to do so, which adversely, improperly, and unduly affect the information provided to purchasers and potential purchasers of seed-to-sale tracking and reporting systems in the regulated marijuana market.

**160.** Franwell has been forced to allocate resources and manpower to refute these false and deceptive statements regarding its system in Colorado, Franwell's business relationship in Jamaica, and Franwell's business relationships in Florida, in response to the Defendants' actions.

**161.** Employees of Franwell traveled to meet personally with representatives of Colorado and Jamaica, in an attempt to repair the damage to Franwell's reputation caused by BioTrackTHC's false statements regarding the capabilities of Franwell's seed-to-sale tracking and reporting system.

**162.** As a direct result of Defendants' actions, Franwell has suffered and continues to suffer damages in loss of goodwill, increased legal fees and promotional costs, and lost profits.

WHEREFORE, Plaintiff, Franwell, Inc., demands judgment against Defendants, Bio-Tech Medical Software, Inc. d/b/a BioTrackTHC, Steven Siegel, and Patrick Vo and request this Court:

**(a)** award compensatory damages consisting of loss of goodwill, increased legal fees and promotional costs, and lost profits;

**(b)** award damages for loss of capacity for enjoyment of property, humiliation, and inconvenience;

**(c)** award interest and costs;

**(d)** award reasonable attorneys' fees pursuant to the Wrongful Act Doctrine;

**(e)** award punitive damages; and

**(f)** grant such other and further relief as the Court deems just and equitable.

## COUNT IV
## MISLEADING ADVERTISING
## FLORIDA STATUTES SECTION 817.41

**163.** This is an action for misleading advertising in violation of Section 817.41 of the Florida Statutes.

**164.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 92 as though fully set forth herein.

**165.** Franwell is a competitor of Defendant BioTrackTHC in that they advertise and sell products and services to government entities in interstate commerce generally described as marijuana seed-to-sale tracking and reporting systems.

**166.** The state government agencies, such as the Florida Department of Health, Office of Compassionate Use, are representatives of the citizens of their states; and their purchases of products and services are made on behalf of the citizens of their respective states.

**167.** BioTrackTHC falsely represented to its marijuana industry customers in Florida who were seeking licenses from the Florida Department of Health that BioTrackTHC was the ***"first legal marijuana/cannabis state monitoring and inventory tracking system in the United States,"*** that BioTrackTHC's system is ***"the only seed-to-sale software vetted by a government agency,"*** and that BioTrackTHC has been engaged in ***"consulting and developing systems for the Drug Enforcement Agency (DEA) and the High Intensity Drug Trafficking Area (HIDTA) Program."***

**168.** The above false representations by BioTrackTHC were made to their Florida customers with the recognition by BioTrackTHC that such representations would be passed on to the Florida Department of Health in the applications by those customers, which is in fact what occurred. Pages from a Florida applicant's application containing the above false assertions by BioTrackTHC are attached hereto and incorporated as **Composite Exhibit "S."**

**169.** Defendants further falsely advertised on BioTrackTHC's website that its seed-to-sale tracking and reporting system involves patented technology, is RFID capable and is DEA approved.

**170.** On January 22, 2015, BioTrackTHC sent an email with a link to its website and enclosing an advertisement titled **"Why Florida State Needs a Monitoring/Traceability System"** to the Director of the Office of Compassionate Use for the Florida Department of Health, Patricia Nelson. A true and correct copy of the January 22, 2015 email and attachment is attached hereto and incorporated herein as **Exhibit "T."**

**171.** Defendants' manipulation and distortion of industry terms and false statements misrepresent the characteristics of their software products while falsely disparaging Franwell's competing software and further enhanced RFID products.

**172.** Defendants have published the above assertions directly and indirectly to government employees and officials in the State of Florida in a manner intended to mislead and deceive Florida's and other states' government procurement representatives that BioTrackTHC's seed-to-sale tracking and reporting system include patented technology and RFID technology, have federal government approvals, and was the first state monitoring and inventory tracking system vetted and adopted by a state government.

**173.** The impressions created by such intellectual property technicalities presented by Defendants directly to applicants for state licenses and on Defendant BioTrackTHC's website are intended to deceive government consumers in Florida, acting on behalf of all the citizens of Florida, and other state government consumers in their respective representative capacities, and are likely to continue to do so.

**174.** Defendants' other false statements that BioTrackTHC was the first, is the only, and is the largest seed-to-sale tracking and reporting system in the world, likewise have the capacity to deceive government consumers in the State of Florida and other states throughout the United States charged with selecting on behalf of their citizens the best available marijuana tracking and reporting technologies in the regulated marijuana market.

**175.** As a result of Defendants' false, deceptive and misleading advertisements made in bad faith, Plaintiff has suffered and continues to suffer serious injury in the form of a gradual deterioration of its competitive posture in contrast to BioTrackTHC in states such as Florida where it will be competing for government contracts, as well as a loss of government contracts to BioTrackTHC in bid proposals already made, including a loss of the perpetual sales that result from such contracts, loss of market share, loss of goodwill, increased promotional costs, and lost profits.

**176.** Plaintiff is irreparably injured as a result of Defendants' misrepresentations in its false, deceptive and misleading advertisements.

WHEREFORE, Plaintiff, Franwell, Inc., demands judgment against Bio-Tech Medical Software, Inc. d/b/a BioTrackTHC, Steven Siegel, and Patrick Vo for misleading advertising in violation of Florida Statutes § 817.41 and request this Court:

**(a)** award damages consisting of lost sales, lost market share, loss of goodwill, increased promotional costs, and lost profits;

**(b)** award attorneys' fees and costs pursuant to Section 817.41(6);

**(c)** award punitive damages pursuant to Section 817.41(6);

**(d)** enjoin Defendants from disseminating the misleading advertising; and

**(e)** grant such other and further relief as the Court deems just and equitable.

**COUNT V**
**COMMON LAW UNFAIR COMPETITION**

**177.** This is an action for unfair competition pursuant to Florida Common Law.

**178.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 92 and 166 through 176 as though fully set forth herein.

**179.** Franwell is a competitor of Defendant BioTrackTHC in that they advertise and sell products and services to government agencies in interstate commerce generally described as marijuana seed-to-sale tracking and reporting systems.

**180.** The state government agencies, such as the Florida Department of Health, Office of Compassionate Use, are representatives of the citizens of their states; and their purchases of products and services are made on behalf of the citizens of their respective states.

**181.** Defendants falsely represented to the public, including the various state government agencies, that they were the ***"first in the world"*** to track marijuana through the entire supply chain, that they sold the ***"first marijuana/cannabis seed-to-sale system in the United States,"*** that they owned the ***"first real-time monitoring system in the United States,"*** that they ***"sold the first marijuana seed-to-sale tracking and reporting system and are the largest seed-to-sale vendor in the world,"*** that they developed the ***"only true marijuana seed-to-sale tracking***

***software system for industries and the nation,"*** and that their system is the ***"only one with controls to prevent bad product from getting onto retail shelves."***

**182.** Defendants further falsely advertised that their seed-to-sale tracking and reporting system involves patented technology, is RFID capable and is DEA approved.

**183.** Defendants' manipulation and distortion of industry terms and false statements misrepresent the characteristics of their software products while falsely disparaging Franwell's competing software and RFID enhanced tracking system.

**184.** Defendants have published false claims, intended to mislead and deceive government procurement representatives, that BioTrackTHC's seed-to-sale tracking and reporting system involves patented technology, federal government approvals, and RFID technology, and was the first state monitoring and inventory tracking software system for government regulated marijuana.

**185.** The impressions created by such assertions involving intellectual property technicalities presented by Defendants on Defendant BioTrackTHC's website and transmitted indirectly to government consumers through applicants for government licenses are intended to deceive government consumers and are likely to continue to do so.

**186.** BioTrackTHC is specifically targeting Florida's Department of Health, Office of Compassionate Use, that has been tasked with the duty of selecting and regulating the Compassionate Medical Cannabis Act of 2014.

**187.** Defendants' false statements that BioTrackTHC was the first, the only, and the largest seed-to-sale tracking and reporting system in the world, coupled with false representations of patented and DEA approved technology applicable to such system, have the capacity to deceive government consumers in the State of Florida and other states currently charged with

selecting on behalf of the citizens of their respective states the best available marijuana tracking and reporting technologies in the regulated marijuana market.

**188.** Government consumers are being led to believe that BioTrackTHC's software system is the first state monitoring and inventory tracking system in the United States when in fact Franwell developed the first state monitoring and inventory tracking system in the United States for the State of Colorado.

**189.** BioTrackTHC is using deceptive tactics to leverage its product to government consumers, as representatives of the citizens they serve, who are the ultimate consumers of such products and services selected by their government representatives, as stated above.

**190.** This resulted in marijuana seed-to-sale tracking and reporting contract awards to BioTrackTHC by the States of Washington, New Mexico, New York, and Illinois.

**191.** Defendants knew or should have known of the falsity of the aforementioned misrepresentations.

**192.** Defendants' conduct has misled the consuming government agencies, who act as purchasing representatives of their public constituencies in the regulated marijuana market, concerning the timing, nature, magnitude, and use of BioTrackTHC's tracking products and services, the attributes of BioTrackTHC's tracking products and services, and the existence and attributes of competitive products and services, all to the detriment of Franwell's legitimate business enterprise.

**193.** Defendants' untruthful statements regarding their abilities, claiming Franwell's achievements for its own, and falsely labeling patent protection and DEA approval were deceptive and fraudulent, intending to create a false impression upon government agencies acting in their

consumer capacity on behalf of the citizens of Florida and every other state where some degree of marijuana has been legalized.

**194.** Defendants' misrepresentations were made in bad faith and with malice or reckless indifference to the Plaintiff's interest and consumers' interests.

**195.** As a result of Defendants' false and deceptive representations made in bad faith, misleading government consumers and the ultimate citizen consumers, Franwell has lost its bids to provide its seed-to-sale tracking and reporting, through its METRC System, to BioTrackTHC in the States of Washington, Illinois, and New York.

**196.** As a result of Defendants' misrepresentations, Plaintiff has suffered and continues to suffer damages in lost sales, lost market share, loss of goodwill, increased promotional costs, and lost profits.

**197.** Plaintiff is irreparably injured as a result of Defendants' misrepresentations in marketing its product and services.

WHEREFORE, Plaintiff, Franwell, Inc., demands judgment against Bio-Tech Medical Software, Inc. d/b/a BioTrackTHC, Steven Siegel, and Patrick Vo for common law unfair competition and request this Court:

**(a)** award damages consisting of lost sales, lost market share, loss of goodwill, increased promotional costs, and lost profits;

**(b)** issue a temporary injunction requiring Defendants to cease and desist further misrepresentations regarding its seed-to-sale software during the pendency of this action;

**(c)** permanently enjoin Defendants from disseminating the misrepresentations;

**(d)** award costs, including attorneys' fees pursuant to the wrongful act doctrine; and

**(e)** grant such other and further relief as the Court deems just and equitable.

## COUNT VI
## DECEPTIVE AND UNFAIR TRADE PRACTICES
## FLORIDA STATUTES SECTION 501.201

**198.** This is an action for deceptive and unfair trade pursuant to Florida Statutes §501.201 (2015), Florida Deceptive and Unfair Trade Practices Act ("Act") against BioTrackTHC, Siegel, and Vo.

**199.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 92 and 166 through 176 as though fully set forth herein.

**200.** Franwell is a competitor of Defendant BioTrackTHC in that they advertise and sell products and services to government entities in interstate commerce generally described as marijuana seed-to-sale tracking and reporting systems.

**201.** State government agencies in states where some degree of marijuana has been legalized, such as the States of Florida, Colorado, Washington, Illinois, New York, Oregon, Hawaii and Alaska, while acting in the market to purchase products and services from Franwell and BioTrackTHC are consumers within the meaning of the Act.

**202.** A government agency's purchase of the marijuana seed-to-sale tracking and reporting systems along with the service of the system is a consumer transaction within the meaning of the Act.

**203.** Defendants falsely represented that they were the ***"first in the world"*** to track marijuana through the entire supply chain, that they sold the ***"first marijuana/cannabis seed-to-sale system in the United States,"*** that they owned the ***"first real-time monitoring system in the***

***United States,"*** that they ***"sold the first marijuana seed-to-sale tracking and reporting system and are the largest seed-to-sale vendor in the world,"*** that they developed the ***"only true marijuana seed-to-sale tracking software system for industries and the nation,"*** and that their system is the ***"only one with controls to prevent bad product from getting onto retail shelves."***

**204.** Defendants further falsely advertised that their seed-to-sale tracking and reporting system involves patented technology, is RFID capable, and is DEA approved.

**205.** Defendants' manipulation and distortion of industry terms and false statements misrepresent the characteristics of their software products while falsely disparaging Franwell's competing software and RFID enhanced tracking system.

**206.** Defendants have published the "patent issuance," "DEA approval," "RFID capable," and "only real-time monitoring system" in a manner intended to mislead and deceive government procurement representatives that BioTrackTHC has patented technology, federal government approvals, RFID technology, and the only real-time system, relating to its marijuana seed-to-sale software.

**207.** The impressions created by such intellectual property technicalities presented by Defendants on Defendant BioTrackTHC's website, and transmitted indirectly to government consumers through applicants for government licenses, are intended to deceive government consumers, have already deceived them, and are likely to continue to do so.

**208.** Defendants' false statements that BioTrackTHC was the first, the only, and the largest seed-to-sale tracking and reporting system in the world, coupled with false representations of patented and DEA approved technology, had the capacity to deceive and did deceive government consumers charged with selecting on behalf of the citizens of their respective states

the best available marijuana tracking and reporting technologies in the regulated marijuana market.

**209.** Defendants' misrepresentations have misled consumers in the regulated marijuana market concerning the nature and legal status of Defendant BioTrackTHC's seed-to-sale software and the existence of competitive products to the detriment of the government consumers and the public they represent and to the detriment of Plaintiff's legitimate business enterprise.

**210.** This deception has resulted in marijuana seed-to-sale tracking and reporting contract awards to BioTrackTHC by the States of Washington, Illinois, and New York.

**211.** Defendants knew or should have known of the falsity of the aforementioned misrepresentations.

**212.** Defendants' conduct has misled the consuming government agencies and their public constituencies in the regulated marijuana market concerning the timing, nature, magnitude, and use of BioTrackTHC's tracking products and services, the attributes of BioTrackTHC's tracking products and services, and the existence and attributes of competitive products and services, all to the detriment of Franwell's legitimate business enterprise.

**213.** Defendants' misrepresentations were deceptive and fraudulent and created a likelihood of customer confusion.

**214.** Defendants' misrepresentations were made in bad faith and with malice or reckless indifference to the Plaintiff's and consumer's interests.

**215.** As a result of Defendants' false and deceptive representations made in bad faith, leading to government consumer confusion and reliance, Franwell has lost its bids to provide its software and RFID enhanced system to BioTrackTHC in the States of Washington, Illinois, and New York.

**216.** Not only has Franwell lost sales, it has lost market share, loss of goodwill, increased promotional costs, and lost profits due to expending substantial amount of resources to counteract Defendants' misrepresentations.

**217.** Plaintiff is irreparably injured as a result of Defendants' misrepresentations in marketing its product and services.

**218.** The misrepresentations violate the standards of fairness and deception prohibitions as set forth and interpreted by the Federal Trade Commission and the federal courts.

**219.** As a result of Defendants' misrepresentations, Plaintiff has suffered and continues to suffer damages in lost sales, lost market share, loss of goodwill, increased promotional costs, and lost profits.

WHEREFORE, Plaintiff, Franwell, Inc., demands judgment against Bio-Tech Medical Software, Inc. d/b/a BioTrackTHC, Steven Siegel, and Patrick Vo for violation of Florida's Deceptive and Unfair Trade Practice Act, Florida Statutes § 501.204 and request this Court:

**(a)** declare that Defendants acts of misrepresentation constitute unfair and deceptive trade practices in violation of Florida Statutes § 501.201;

**(b)** issue a temporary injunction during the pendency of this action requiring Defendants to cease and desist further misrepresentations with respect to any aspect of marijuana seed-to-sale tracking and reporting system products and services, and by restraining their use of words suggesting:

**(i)** that their products and services are **(A)** the only true, **(B)** the first, **(C)** the only, and **(D)** the largest seed-to-sale tracking and reporting system in the world and the nation, including the use of any qualifying words such as "real-time" with such words; and

**(ii)** that Defendant BioTrackTHC **(A)** has obtained any recognition from the DEA that would relate to BioTrackTHC's seed-to-sale tracking and reporting systems, **(B)** that there is any current "patent" coverage, applicability, or protection with respect to BioTrackTHC's seed-to-sale tracking and reporting technology, **(C)** that BioTrackTHC's products and services include RFID components, or **(D)** that Franwell's METRC System in Colorado does not involve real time tracking and reporting during the pendency of this case;

**(c)** permanently enjoin Defendants from disseminating the aforesaid misrepresentations;

**(d)** award actual damages suffered by reason of Defendants' false misrepresentations consisting of lost sales, lost market share, loss of goodwill, increased promotional costs, and lost profits;

**(e)** award attorneys' fees pursuant to Florida Statutes § 501.2105;

**(f)** award Plaintiff's cost incurred in bringing this action; and

**(g)** grant such other and further relief as the Court deems just and equitable.

**COUNT VII**
**DEFAMATION**

**220.** This is an action for common law defamation against BioTrackTHC, Siegel, and Vo.

**221.** Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44 and paragraphs 144 through 156, as though fully set forth herein.

**222.** BioTrackTHC, Siegel, and Vo have published false statements about Franwell in their attempt to wrongly gain market shares.

**223.** In BioTrackTHC's written response to RFP to the State of Illinois on November 13, 2014, it made the following false, misleading and deceptive statement about Colorado's Marijuana Enforcement Division and thereby Franwell, by virtue of Franwell's METRC System used in Colorado:

> *Due to the limitations of the technology the Marijuana Enforcement Division employs and its inability to accept real-time data, BioTrackTHC has made significant enhancements to correlating and cross-referencing the required daily reporting data against the actual real-time record.*

*See* **Exhibit "H."**

**224.** Franwell subsequently lost the contract to BioTrackTHC in the State of Illinois.

**225.** BioTrackTHC representatives in Colorado falsely and maliciously have told their marijuana industry customers in Colorado (to whom BioTrackTHC sells enterprise software programs that include, among the functions, a method of making the required reports to Colorado Franwell's METRC System), that "*Franwell continues to keep changing their import instructions and it has caused all kinds of problems,*" and that "*Franwell is not being supportive or providing documentation.*"

**226.** Some of these BioTrackTHC customers, who as licensees of the State of Colorado are thereby required to report to that State, made complaints about Franwell to the Director of the Colorado Marijuana Enforcement Division by repeating what BioTrackTHC had told them when they were having problems making mandatory reports on the Franwell METRC system.

**227.** These false and malicious statements were repeated to an employee of Franwell, Cathy Jolley **("Jolley")**, by a BioTrackTHC industry customer, L'Eagle Services, LLC **("L'Eagle")** on February 14, 2014.

**228.** As a result, Jolley contacted BioTrackTHC in an effort to resolve the problems that L'Eagle was having with inputting data for mandatory reporting to the State of Colorado.

**229.** BioTrackTHC's employee, Eddie Thomas, told Jolley that the problem was with Franwell's system not BioTrackTHC's system.

**230.** Thomas mistakenly believed that Jolley was an employee of L'Eagle.

**231.** In the telephone conversation on February 14, 2014, Thomas began making disparaging remarks about Franwell and stated that *"Franwell continues to keep changing their import instructions, and it has caused all kinds of problems,"* and that *"Franwell is not being supportive or providing documentation."*

**232.** In January 2015, Defendant Vo knowingly sent false statements about the METRC system in email to the Director of the Colorado Marijuana Enforcement Division that included a copy of Vo's prior email memo to Colorado State Senator Owen Hill *(copying Steven Siegel and other persons)* which included the following false, malicious and disparaging statements about Franwell's METRC system operating under the Colorado Contract:

> *"Colorado is neither capturing nor able to report on any meaningful marijuana industry data, medical or recreational. Not only is the software system utilized by the Colorado Marijuana Enforcement Division (MED) wholly inadequate for tracking marijuana from seed-to-sale, computing tax obligations, etc., it is highly unlikely that it will be able to capture laboratory testing data even though the state started ordering testing in the Spring.*
>
> *This is not the fault of the MED. The MED awarded a contract for a marijuana tracking system before true marijuana seed-to-sale technology was available, and so the contract was awarded to a company that has zero experience in marijuana tracking. As a result, Colorado has a system that cannot capture or produce the data the State needs to promote public safety, prevent diversion, enforce regulations, or collect taxes.*
>
> * * *
>
> *Per your discussion with Steven Siegel, CEO, we would be happy to have further discussions with you to see what can be done to possibly replace the current system with the proven system utilized by the State of Washington*

*See* **Exhibit "N."**

**233.** On March 17, 2015 in an attempt to scare the public, Vo, as the co-CEO of BioTrackTHC was quoted in the *Broward Palm Beach New Times*, which BioTrackTHC posted on its website, as stating that Franwell's tracking system used by the State of Colorado has *"no system of controls preventing bad product from getting onto retail shelves."* *See* **Exhibit "B."** Such statement was false and malicious.

**234.** As detailed in paragraphs 144 through 156 above, Wanda James, as the agent of the Defendants, defamed Franwell in Jamaica where BioTrackTHC is currently competing with Franwell for a seed-to-sale contract with that country. *See* **Exhibits "P" and "Q**."

**235.** In her April 23, 2015 email memo to Minister Mark Golding, James falsely stated that BioTrackTHC has *"beaten Franwell in each of the states they have competed for the contracts."*

**236.** At the time of James' April 23, 2015 email memo to Minister Mark Golding, Washington State was the only state to have awarded BioTrackTHC a seed-to-sale tracking and reporting contract in completion with Franwell. The only other state that had awarded BioTrackTHC a seed-to-sale tracking and reporting contract at that time was New Mexico, however Franwell did not respond to the RFP of New Mexico or compete for a contract award in that state.

**237.** In that same email, James included three live links to 2014 news articles *(the* ***"News Articles")*** that she said were "contrasting the data coming from the system BioTrackTHC developed for the State of Washington against the data coming from Franwell's system for Colorado." One of the links was titled "marijuana contaminants testing."

**238.** Contrary to James' misrepresentations, the News Articles did not contrast the two systems capabilities, but rather contrasted the data made available to the public by the regulatory agencies in Colorado State in contrast to Washington State.

**239.** James thereby maliciously asserted that there is a lack of recorded data on the identification of contaminated marijuana in the Colorado regulatory system where Franwell's system is in use, in contrast to public availability of such data in Washington State where BioTrackTHC's system is in use. Such data unavailability in Colorado regulatory system and such data availability in Washington State is untrue.

**240.** James, as the agent of Defendants, has been engaging in a malicious undertaking to defame Franwell in Jamaica by email communications; and the purposes for which Defendants retained her indicate that she will persist in defaming Franwell not only in Jamaica but elsewhere as well.

**241.** BioTrackTHC, Siegel, and Vo, directly and indirectly, have publically, methodically, and persistently, directly and indirectly, disseminated the false and deceptive statements referred to above and continue to do so, which adversely, improperly, and unduly affect the information provided to purchasers and potential purchasers of seed-to-sale tracking and reporting systems in the regulated marijuana market.

**242.** Defendants' conduct has misled the consuming government agencies, acting on behalf of their public constituencies, in the regulated marijuana market concerning the timing, nature, magnitude, and use of BioTrackTHC's tracking and reporting products and services, the attributes of BioTrackTHC's tracking and reporting products and services, and the existence and attributes of competitive products and services, all to the detriment of Franwell's legitimate business enterprise.

**243.** Franwell engaged its legal counsel to demand that BioTrackTHC cease and desist the publication of false, misleading, and disparaging statements, as discussed in more detail above, and promptly send a retraction of the above specified false and grossly misleading statements that Vo, as a senior executive of BioTrackTHC, made to **(a)** Colorado State Senator Owen Hill and forwarded to the Director of the Colorado MED, **(b)** any other legislators or officials of Colorado or any other state or governmental entity, **(c)** any MED officials, and **(d)** any other governmental officials. *See* **Exhibit "O."**

**244.** On January 27, 2015, BioTrackTHC replied to the letter from Franwell's legal counsel with a letter stating that **(a)** it denies its statements quoted in the letter from Franwell's counsel constitute false, defamatory, or disparaging statements about Franwell; **(b)** denies it falsely portrays itself, its technology solutions, or its accomplishments; **(c)** refuses to retract anything it has published; **(d)** denies it tortiously interfered with Franwell's Colorado Contract; and **(e)** denies it made any false or grossly misleading statements about **(i)** BioTrackTHC's products and services, **(ii)** Franwell, or **(iii)** the METRC System. A true and correct copy of the response is attached hereto and incorporated herein as **Exhibit "U."**

**245.** Despite Plaintiff's demand, Defendants refuse to cease and desist the publication of false, misleading, and disparaging statements that are harmful both to Franwell and the public, including the constituencies of the government regulators who are subjected to such false, misleading, and disparaging information and their refusal to retract the false and grossly misleading statements that Vo made to Colorado officials continues to cause injury to Plaintiff Franwell.

**246.** Defendants' direct and indirect communications about Franwell were incompatible with the proper exercise of lawful business, trade, profession or office, and are thus, libel and

slander per se.

**247.** As a result of misrepresentations by Defendants and their agents, Franwell has suffered and continues to suffer damages to its reputation, which has resulted in and is continuing to result in lost sales, loss of market share, loss of goodwill, increased promotional costs, and lost profits.

WHEREFORE, Plaintiff, Franwell, Inc., demands judgment against Bio-Tech Medical Software, Inc. d/b/a BioTrackTHC, Steven Siegel, and Patrick Vo and request this Court:

**(a)** enjoin Defendants from continuing to defame Franwell;

**(b)** award damages for injury to Franwell's reputation which resulted in lost sales, loss of market share, loss of goodwill, increased promotional costs, and lost profits;

**(c)** award damages for loss of capacity for enjoyment of property, humiliation, and inconvenience;

**(d)** award damages for costs incurred for bringing this action;

**(e)** award attorneys' fees pursuant to the wrongful act doctrine;

**(f)** award punitive damages; and

**(g)** grant such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY

Plaintiff demands a jury trial of all issues so triable in this action.

Respectfully submitted,

**J. MEREDITH WESTER, ESQUIRE**
Florida Bar Number 881317
jmw@mechaniknuccio.com
srw@mechaniknuccio.com
**MARSHA M. MOSES, ESQUIRE**
Florida Bar Number 0084925
mmm@floridalandlaw.com
**MECHANIK NUCCIO**
**HEARNE & WESTER P.A.**
305 S. Boulevard
Tampa, Florida 33606
Telephone: 813-968-1002
*Attorneys for Plaintiff Franwell, Inc.*

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing Second Amended Complaint and the facts stated in it are true and correct based on my personal knowledge.

**JEFFREY L. WELLS,**
**President of Franwell, Inc.**

SWORN TO and subscribed before me this 29th day of February 2016, by Jeffrey L. Wells who is personally known to me or has produced a Florida driver's license.

NATHANIEL R. HOOVER
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE877738
Expires 4/19/2017

Notary Public
State of Florida at Large

My commission expires: 4/19/2017

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Second Amended Complaint has been furnished electronically via the Court's CM/ECF system to David I. Shiner, Esq. at Litigation@incourt.com, and david@incourt.com and Lara S. Shiner, Esq. at lara@incourt.com this 29th day of February, 2016.

**J. MEREDITH WESTER**